The last case for argument is 19-1765, Dropbox v. Synchronoss Technologies. I'm going to give them a minute to settle in. Okay, I think we're ready to get started. Thank you, Your Honor. Good morning, and may it please the Court. On page 15 of the red brief, Synchronoss says you don't dispute that claim one of the 541 patent is representative. Is that true? That is correct, Your Honor. Okay, great. That's easier to say. Yes, Your Honor. This is an appeal from decisions finding three distinct patents invalid on a motion to dismiss. But this isn't far from the paradigmatic Alice case that can appropriately be decided on the pleadings, and it was error for the district court to do so. It's undisputed that none of the three patents at issue here claims the computerized implementation of a longstanding practice or business method. On page 28 of the blue brief, you argue that the district court erred by considering whether quote, each representative patent claim directed to an abstract idea without considering whether the claim solved technological problems that existed at the time of the invention. It's a key phrase. Two questions. One, what record evidence shows the district court ignored the time of the invention as a state of the art? And two, should the time of invention be relevant to determining whether something is a law of nature or a natural phenomenon? I'll take the second question first, Your Honor. As to whether the time of the invention should be relevant to determining whether something is a law of nature or a natural phenomenon, I don't think we need to reach that question in this case because this is a case about whether computerized inventions or computer-based inventions claim an abstract idea. And in that context, in the context of that question, I think that the time of the alleged invention and what the state of the art was at that time is relevant because this court has explained that one of the ways we determine at Alice Step 1 whether we have claims directed to an abstract idea or not is to ask the question, is this an improvement to computer technology? Assuming you're right for the sake of argument, I mean you make the assertion, it's a very broad assertion, particularly because we've got three different claims here which are all quite different, but you never tell, I mean you make this assertion, this is what the district court did, you don't point to anything she said, any part of her analysis that clearly does that. So even if we were hypothetically to agree with your analysis about this time thing, what did you give us in the briefing? I mean did you point to anything, am I wrong? I didn't see where you pointed to anything she said in her analysis that would support your assertion. Two responses to that, Your Honor. First, what we pointed to, and this is in the reply brief, is the absence of anything in the district court's decision indicating that she did consider Alice Step 1 from the time of the election bench, and all that the appellee's brief pointed to were quotations from our briefing that the district court cited in her decision. But I think here the bigger point is this, Your Honor. This case, in my view, is unprecedented in the following way. We here have three patents that expressly state that they are solving, in the case of the 505 patent, quote, a difficult technical challenge, close quote. And that should be taken at face value on a motion to dismiss. The district court's conclusions here, by not considering and not going through in her and what the problem was that was supposed to be solved, that is an indication that this court should at least clarify the law to say that Alice Step 1- I really am a little flummoxed by your argument, because it seems to be sort of esoteric. But we're looking, I mean, it would be more helpful to me if you pointed, I mean, it's difficult. This is like three cases in one, because there's three separate patents, and each of the claims rises or falls for completely different reasons. But look at the 505 patent. I don't know what you think the court should have done more than she did, but this is pretty, this is about data security and clearances. This sounds very familiar to me. I've been a bureaucrat for 45 years. In the government, you have various classifications of documents, and you have various security clearance levels. And that when you would mix one to the other seems like a very longstanding, well-accepted practice. So you can push back, but so my understanding is that when you say you don't, there's no recitation of the claims of how you achieve the result of doing it, and there's no indication that this is beyond just conventional routine processes that you think you've claimed. So tell me why I'm wrong on that. Let's analyze the specific claim of 505. Yes, Your Honor. I respectfully think you're wrong for the following reasons. I think Your Honor is correct that an access filter does restrict access to a resource. And access filters were known in the art. We're not claiming that this invention is an access. It is the invention of filtering data. In fact, the first five columns of the 505 patent explain in great detail existing access filters. And if the court would indulge me and turn to page 187 of the appendix, which is column five of the 505 patent, we can see, for example, that beginning at line 21 and extending to about line 60, the patent expressly says, here are the problems, technological problems with, quote, present-day access filters. So what the 505 patent claims is not restricting access to data. Instead, it's claiming an improved access filter that the specification expressly states addresses problems that are characteristic of the Internet. And what it allows is for a faster virtual private network. Because in the prior art, what the patent says is every time you had an access filter, it did one thing. And you would have to, therefore, process your requests through multiple filters, slowing down the pathway as you went. And what it said is, as we make these virtual private networks larger, we're bumping into a scalability problem, because we've got to put so many filters in between the request and the resource that we're burdening the network, and it's not efficient. And so the problem that the 505 claim, and this is in the claim, Your Honor, solves, is let's do this once. Let's have every access filter have a common understanding of the criteria for analyzing the request, designate sensitivity levels by resource, not by should we just let somebody through this firewall or not. And then we'll do the filtering once, not five times, between the time that the request is made and the resource is accessed. That is an improvement to virtual private networks. The patent says that it will make them faster, which is one of the things that this court has recognized is an improvement to computing technology. And so, Your Honor, I would respectfully push back on your characterization. I think it's the same error that the district court made by not, frankly, giving appropriate weight to the express statements in the 505 patent itself between columns one and five about what the problem was, and then not taking into account the other 43 columns that follow that. In 1991, when I logged into a Pentagon computer system and entered my top secret SCI clearance, wasn't that assigning a sensitivity level? Your Honor, I think you are conflating what you were doing and what the network was doing at that point in time. So what the network was doing at that point in time, I think, Your Honor, in terms of Let's go back 50 years and say when my dad showed his ID card with a security clearance level on it. Manually done. Absolutely, Your Honor. And this patent is not about how do you designate a resource as being sensitive or not sensitive or of medium sensitivity. This patent is about how does the computer network itself operate more efficiently to permit access to particular data resources. And so I don't think we could come up with some tortured analogy and try to reverse engineer something that was done, but the patent itself says that the problem that's being addressed is one that's characteristic of the Internet. That's a quote. It says it's a difficult technical challenge, and on a motion to dismiss, the district court should take that at face value. You can't disregard what the patent itself says about the state-of-the-art when ruling on a motion to dismiss. Maybe later in the case there's an expert that walks in and says the patent's wrong on that. It was common, and that's different. But at the motion to dismiss level, we need to take the patent at face value. Wait, so what is sufficient at the motion to dismiss to just assert that this was a difficult thing that we accomplished? If the patent itself, Your Honor, says that the problem that's being addressed is a difficult technical challenge, and the claims bear out that what is being addressed is that challenge, then I think at the motion to dismiss phase, that needs to be credited because we're doing this on the pleadings without the benefit of experts or other evidence. Now, the 399 patent... I'm a little confused. It seems to me you're blurring step one and step two, and that what you're saying is very relevant at step two. But the claims, if they're directed to an abstract idea, even if it's a novel abstract idea, it doesn't matter whether it's new or not at step one. It's an abstract idea. I don't think that's correct, Your Honor. And the reason is that the test that the court has... One of the tests that the court has explained for determining whether something is directed to an abstract idea in this context is we need to look at whether it is solving a problem inherent in the computer itself, or is it solving some other problem that exists in the world, but it uses a computer to solve the problem. Sure. That's one way of looking at whether it's actually claiming something concrete or not. But if we look at the claims and say this is just claiming an abstract idea, even if it's a new way of doing it, it doesn't make it non-abstract if it's abstract altogether. I agree with that, Your Honor. And then we move to step two and we ask ourselves, is it doing it using an inventive concept? Is there some element or combination of elements that is inventive that implements the abstract idea? So if we had, for example, a patent that was directed... So let's say the abstract idea, we disagree with you and agree with the district court that the idea of using these various security things is just an abstract idea of allowing or preventing access and things like that. Then move to step two. What besides the abstract idea makes this patent eligible? What makes this patent eligible is... Because it's all routine computer equipment, right? You haven't invented a new kind of server. You haven't invented new routers or a new internet, whatever. There's no invention of new hardware, Your Honor, but there is invention of new access filters. And an access filter is a component in a computer network. And what's being claimed is a novel access filter. There's nothing abstract about an access filter. But to Your Honor's question, if we move to step two and you assume that the claim is directed to an abstract idea, what we have here is a combination of elements that is unconventional. And that's what the patent says. Whereas before, to... What elements? The elements is pulling into one access filter the analysis of four different things, the source of the request, the sensitivity level of the data resource, the path over the internet that the request is going to take, and whether it's encrypted or not in the level of the encryption. That was never done in one place. And what the patent says at column eight, Your Honor, is doing this in one place means we don't have to do it at other filters as we go through the network. And that's unconventional in the same way that in BASCM the opposite, I would say, was unconventional, where we were moving something that had been done in one location to a different location. It's a very similar reasoning for why at Alice Step 2 we would pass muster. Now, the 399 patent is different, and it's valid for a different reason. The reason the 399 patent is valid... Show me where in Claim 1 in 505 it describes how the access filters restrict or allow access. Because that's Step 2. Take me there again. Yes, Your Honor. So if we review Claim 1, it's directed to an apparatus that provides an information resource, and it defines what the access control information is going to be in the first limitation. Give me your... I'm sorry. Oh, I apologize, Your Honor. Appendix 209 at column 49 beginning at line 2. Okay, go ahead. So the claim says we need to... the apparatus needs to define two things. One is the sensitivity level associated with the resource, and the second is a trust level associated with the mode of identification. Okay, so we're all assuming that's part of the abstract idea, that you're going to consider both things. And we'll assume that that's part of the abstract idea, Your Honor? Yeah. Okay, we'll do. We obviously disagree with that, but I understand Your Honor's question. Assume that that's part of the abstract idea, the definition of the sensitivity level of the resource and the trust level associated with the mode of identification. That's my ID card. The second limitation is an access checker, which permits the apparatus to provide the resource only if the trust level for the mode of identification is sufficient for the sensitivity level of the resource, combining those two determinations in one place. That's it? Yes, Your Honor. In the prior arc, that was two separate access filters that needed to be used to make those two determinations. In this invention, in Claim 1, it's one access filter. That's unconventional at Step 2. If we go to Claim 8, we have more because there's more required in Claim 8 in terms of the path that the resource request takes and the encryption level. As I was saying before, if we look at the 399 patent, Your Honor, it's valid for a different reason, and that is it makes the Internet more useful for ordinary people. And that has been found by this court in Core Wireless v. LG, for example, to be something that is not ineligible at Alice Step 1. What the 399 patent claims is the combination of two distinct networking technologies that it states had not previously been combined. They had been siloed from one another. And what it meant was that ordinary people who didn't have the computer sophistication to upload large amounts of data by initiating a file transfer protocol session could now do so with a website, an interactive web session as the patent describes it. And that is an advantage and an improvement to computer networks itself. And finally, Your Honor, on the 541 patent, it says, and I think at the motion to dismiss phase we have to take it at face value, that it enabled for the very first time wireless backup of personal devices like cell phones. It transformed a process that it said used to have to be performed with two devices in the same room and a wire into a process that could be done without a wire over a mobile network. And it describes a specific way of doing that. Your Honor, unfortunately, there was no time clock going, so I don't know how much. Oh, you don't have a time clock? It's been blacked out, so I would like to reserve some time. Well, because you've exceeded your time by two minutes. I don't know what your clock says, but you're way over time. So we'll restore some time for rebuttal. Thank you, Your Honors. That's the best excuse I've ever heard. It's true, too. Oh, you're an officer of the court. Good morning, Your Honors, and may it please the court. Better take your watch off. I'll start the time now. The claims of Dropbox's patents are abstract, which renders them invalid. The claims in these patents are incredibly broad. But Dropbox, in their briefing and in the case below, really ignored the claims. Instead, their arguments focused on general statements from the specification that they allege constitute improvements over the prior art. However, the specifications in a vacuum really can't describe the patents as not abstract. Instead, the analysis really needs to focus on the claims and the claim language itself. I know, and like your friend, you're starting off, and all of this nebulous kind of wording and discussion is not terribly helpful to me personally. So why don't we turn to the 399? Sure, Your Honor. And as your friend had a little time to say, this patent lays out a specific solution to a problem arising only in computers, and it employs synchronizing. And they claim, and I don't think you can dispute it, the motion just misstates. This is the first time that synchronization has been used for the file transfer session in an interactive session. Why isn't that sufficient? Why does that not feel like it? I mean, it might be an obviousness case, but why does that not feel like an eligibility issue? Right, well, so, I mean, looking at the claims, you know, like I said, you really need to look at the claims. So Claim 1 claims, you know, really only has three elements. It's a method claim, and it claims creating an interactive connection, creating a data transfer connection, and creating a single session ID. Dropbox does not dispute that that interactive connection and data transfer connection are, one's an HTTP connection and one's an FTP connection, and those were incredibly well-known in the art of the patent. Yes, but nobody hits, but the question, well, you know, it's a little confusing to me because in Claim 1, I don't, I mean, clearly the synchronization appears in the later claims, Claim 25. I don't know what the deal is in Claim 1, whether there, it's a preamble. Right, well, so. But assume for a moment that synchronization is a claim. Okay, well, if we want synchronization, it's Claim 25. That's the one we briefed before the district court. The district court relied on Claim 1 as representative. Either way, I mean, we believe that Claim 25 is the best representative claim. Okay, well, let's go there. I mean, it's a functional claim. That's the problem with the way it's claimed. Everything is claimed in a functional manner. Claim 25, you know, has the upload connect, interactive connection server, has the file transfer connection server, and then this, you know, claim synchronizer. And if you look at it and you look at the spec, it's almost a means plus function limitation. Now I'm not trying to argue 112 or anything right now, but it's a very functional claim. And so, I mean, a claim element. And the problem with that is if you look at the court's precedent, and I believe it's the Amaranth versus Dominus. I mean, they're allowed to claim it in functional language as long as they show, the specification shows how they're doing it. I mean, isn't that the problem here is that the district court found that all they're claiming is idea. They're not actually claiming how to do it. And this is a hard line for us, I think, in these abstract idea cases, but I think it's the critical line is if the claim is only claiming an abstract idea of something rather than claiming how to do it, then it's abstract, which I think is where the district court went here. But is there not enough in the specification to show what the synchronizer is here? No, Your Honor, there's not. There's no algorithm. There's no structure. There's no flowchart. There's nothing really. I know I'm going to get in trouble for blurring 112 with this. But, I mean, in a way, they are somewhat parallel ideas in that if all you've claimed is an abstract, you know, functional idea, then you haven't actually claimed something that's patent eligible. But I don't know how we – I mean, is that – this is just a morass. Is that something that we look at as step one? Is it something we look at as step two? Well, it would definitely be a step one issue, Your Honor. And this court's addressed that before in Apple v. Amaranth and the electric power group cases. And really what the court said is, you know, it needs to be a specific improvement in technology. Now, whatever that might be, you know, the court's addressed that. I believe it's the – like the core wireless cited by Dropbox, the court did address that in core wireless. But in that case, it was in the claims, and it was a very specific technical improvement into a UI. I mean, core wireless is about a user interface. Well, I mean, maybe the other side is better positioned than you to answer this. But what is your understanding of what their argument is? Is it everything was well known? These two things and synchronization in and of itself was well known. And we just came up with this great idea that we should get a patent to because we're applying synchronization in this context. Or is it that in order to synchronize these things, which have never been synchronized, and there's a good reason to do it because it makes it more user-friendly, we've got some inventive concept of doing something that hasn't been done? What is your understanding of how this – at least how the district court viewed these? Well, I mean, the district court – you know, the inventive concept thing from Alice is definitely – I mean, that's the step two analysis. And I think Dropbox is really making – putting words in their mouth, and I'm sure that I'll be corrected when rebuttal gets up here. But, you know, they're making an argument that this is a technical improvement, and therefore it gets out of step one, and therefore they're done. But that's not really the case because there's no specific improvement they really cite. They don't tell how to do any of these things. There's no code. There's no even real association in the synchronizer. It just says it synchronizes the operation of the respective connections. And so it's very results-oriented. It's very functional. But what if that's true? Let's assume hypothetically that your friend doesn't disagree with you and that everybody knew how to synchronize and there was nothing monumentally inventive about synchronization, but they had this idea. Nobody had thought about synchronizing these two things, and it's an important advance in technology. So what about that? I mean, even if it wasn't a technological advance in and of itself to do synchronization, why isn't it patent-eligible if they came up with this new method, technological method? Their idea was the application of the synchronization in this context. I mean, that's just not present in the claims or in the background. Is synchronization an abstract idea? In synchronization, I mean, yes. This court's found in Amory & Threedono that synchronizing, I think the quote is by May, Your Honor. It says, as recited in the claims, the concept of synchronous communication and automatic formatting for different handheld devices without more is an abstract idea. I mean, this court has addressed that before directly on point. In synchronizing the communications in this context, there's no structure. There's no specific enablement. Again, I'm going to get in trouble with talking about 112, but there's no specific technological improvement here. Okay. Why don't you turn to 505 where your friend spent most of his time referring to the first five pages of the patent and the discussion of the filters and so forth. Yes, Your Honor. So the real problem, again, with the 505 patent is the claims. I mean, the things that Dropbox says are all these great ideas that are in the background in the specification really don't come through the claims. As Your Honor mentioned, identifying people or identification to allow access to resources has been well known. This is what we pointed out in our briefing. This is what, for example, Judge Bryson held in the British Telecom case sitting in designation, that restricting security to resources is a time-old human practice. There's a famous story following World War II of two British secret agents who were what is called bigoted, that is, secure compartmented information. They were married 45 years, and at the end of that 45 years they revealed to each other that they had both been secret agents. You get the picture. As Your Honor noted, this is years old, and this was well known before this patent was filed, I believe, in the late 90s. And the problem is all these things that they talk about as being great ideas don't flow through to the claims. There's no real limitation that this be any sort of operation done on a computer, and so it's clearly an abstract idea. And then when you get to the Inzeno concept step, it's step two, the specification. You don't even have to look beyond anything in the intrinsic record, and the specification makes clear that all of these things were well known in the prior art, and that this really hasn't come up with any sort of concept. And I'm probably badly paraphrasing his argument, but what I got from it was that these checks occurred at different points, at least two, maybe more points, and their inventive concept is to do it all at once. I mean, again, Your Honor, that's not in the claims. And that's almost more of an obvious misanalysis perhaps than really an inventive concept, you know, Alice analysis. And so the court's precedent makes clear that you need something more, and it's not an obvious misanalysis, and that's what Dropbox is almost trying to make it in this case is some sort of... Are there any more questions? Thank you for your time, Your Honor. Thank you, Your Honors, and I appreciate you restoring a small amount of time. I'll keep it brief. Three points on the 399 patent, which Your Honor spoke with my colleagues about. First is this. His argument was that Claim 25, because it just states synchronizing, doesn't contain any discussion of how to perform the synchronizing. If that is a hang-up, Claim 26, directly after Claim 25 and dependent on Claim 25, explains exactly how to do the synchronizing, and that is through the creation of a single session ID. The second is there was an argument made for the 399 patent... Wait, so that's the description of synchronization? That's the definition? I'm looking at Claim 26. Apparatus according to 25, synchronization, which said synchronization generates a single session ID for two associated sessions, each on a different one of said servers? Yes, Your Honor. So that's how it's done? Correct. And, Your Honor, in the specification itself, there is not only express description of how to do that. I prefer, for example, to Column 8, Appendix 146, Lines 34-39, but contrary to what Synchronosis Council said, there was code provided. At Appendix 148, Column 11, Lines 44 and following, it states that attached herewith is a software appendix of a system for synchronized file upload using an interactive connection, etc. So the patent owner... This is not the paradigmatic Alice case where there's nothing in the specification that tells you how to do this. In fact, it's quite the opposite. There was a disclosure of source code. The second thing I would say, Your Honors, is on the 505 patent, the argument I'm hearing is, yes, there is a patent-eligible invention described in the 505 patent written description, but it didn't make it into the claims. I think, in a nutshell, that's what he may have been saying, or maybe that's not a fair characterization. But I would like to address the claims. I don't think your friend would agree with that. Well, his argument, Your Honor, as I heard it, and maybe I misheard it was... You said you didn't have it in the claims. It's not in the claims. It's not in the claims. You seem to be arguing. I disagree, and we discussed what's in the claims. But what I would say to Your Honors is the claims in the 505 patent are more specific than the claims that this court found did describe patent-eligible subject matter in the Finjan v. Blue Coat Systems case at 879 F. 3rd 1299. These claims in the 505 patent describe exactly what steps the access filter is going to take in order to achieve the improvement, whereas in the claims in Finjan, they were similar because they were directed to virus screening. It's sort of a form of filtering. And what the improvement was was screening according to behavior, not just code. And that's all the claims said. So that's, Your Honor, the first district court's decision on those bases. Thank you. We thank both sides. The case is submitted.